Corporation, Mr. John Gallaghandi. Thank you, your honor. My name is John Gallaghandi, I represent Sanitec Industries, the accountant of this case. I would like to start by making by discussing the question of whether the district court properly found that there was a breach of contract here. This was a declaratory judgment case. The district court erroneously ignored that fact and treated this as if it was solely a patent infringement case. In fact, the infringement was not a contested issue at the trial. There was a court would not let it withdraw its admission. Under the declaratory judgment act, a party to a contract may seek to determine whether a contract exists without committing a breach. 28 U.S.C. Section 2201 provides that the court has jurisdiction to declare the rights and It believed that the license agreement had been procured by fraud, and therefore was void. Its evidence at trial on this issue was directed almost exclusively on the question of whether the contract was valid or not. The fact that it also brought a patent infringement case with its declaratory judgment action does not convert this into a breach of contract. And the reason for that is the patent infringement action was compulsive. Under Texas law, Sanitec had no choice. If it had failed to include the infringement claim in its declaratory judgment complaint, it would have waived that claim under principles of race judicata, because the D.J. claim and the infringement claim arose out of the same operative facts. Texas law takes what's called a transactional approach to the question of race judicata. A subsequent suit is barred if it arises out of the same subject matter as a previous suit, and which, through the exercise of diligence, could have been litigated in the prior suit. The court is also aware of the Supreme Court's decision in Menendez, which provided that a licensee did not have to breach a license agreement in order to provide it with standing or in order for there to be a case of controversy under the declaratory judgment act. We see no real distinction between the holding there and what happened here. The basic principle is that under the declaratory judgment act, a party to a contract does not have to breach in order to confer jurisdiction upon the court, and it may seek to determine the rights of the contract. This is an unusual situation. I mean, you usually have the licensee is the party bringing the D.J. action in a Menendez situation. Well, I understand that. I understand that, Your Honor. But we can't find any reasoned basis for drawing distinctions, particularly in light of the fact that a licensor in this particular case should have the right to determine whether or not there was a valid contract to begin with without having to breach the contract, without that act itself being a breach. But counsel, it's not that act that is the breach. The act that is the breach is the attempted infringement claim. And I understand you were in a tough position. If you didn't bring it, you were going to lose it, but you brought it. You did exactly the opposite of what you promised to do under the license, and you went ahead and sued them for infringement, not for action that arguably isn't within the scope of the license. This isn't a case where they came up with a new product that you're saying doesn't fall within what you were contesting the validity of the license itself. So I'm confused. Well, Your Honor, I... I mean, am I right? The court found that the breach was your infringement claim, not your D.J. action. That's correct. That's correct. In fact, in that part of this decision, it didn't mention the D.J. It basically did not rule on this particular question, the one that I'm raising now, although it was presented to the court. So it's not a case like in Metamune where the filing of the D.J. action constitutes somehow some sort of breach or anything like that. That's not the case here. No, that is not the case here. The case here is that, as the court has pointed out, we had no choice. You had a choice. You absolutely had a choice. You didn't have to file the suit. Well, that's true. We did not have to file the suit. But if we had been successful, if we had been successful in having the license agreement declared in ballot, then essentially we would have given up any right to suit for infringement. You know, it's a Hobson's choice. But, you know, in this particular situation where we're talking about an attorney's fees provision arising out of a contract. Counsel, my problem is that if I agree with you, I mean, I see the predicament you were in as a lawyer. It's a tough choice to make for your client. It's a tough choice to make. But if I agree with you, I've just given license, no pun intended, to every single licensor who wants to challenge or sue for infringement to do so under the insulation of not being a similarly situated patentee would be able to go ahead and sue their licensee always insulated from a breach. Judge Moore, well, Judge Moore, I don't think we have to carry it that far. I mean, we're talking about a situation where there was a legitimate, valid action based upon what we consider to be fraud in the inducement of license agreement. I don't think that's an everyday occurrence. I mean, I suppose litigants can say whatever they want to plead. But this is a situation where there was a legitimate argument that the patent was procured by fraud. That is not the case in every license agreement. I don't think the patent was procured by fraud. I'm sorry. The license agreement. I'm sorry. I misspoke. You see it way too much. No, I understand. I'm saying that this case, which was based upon an allegation that the license agreement was procured by fraud, it's not a garden variety case. I think your question goes to, does this mean that every single patent infringement action, or that there will be no, that every single licensor can bring a patent infringement action on some license agreement was invalid. I don't think that's a serious problem. This is a unique situation. This is a unique situation because we had a very legitimate basis for claiming that the patent was invalid. The lower court didn't agree. I'm sorry. The license agreement is invalid. The lower court didn't agree.  You're telling me it's a legitimate basis. Right. The lower court did not agree after a full trial. Quite frankly, we believe that the court applied the wrong standard. I'm not going to take time to go into all of that now, but the court applied the wrong standard in determining whether or not this was a case in which the license agreement had been procured by fraud and indecency. But I don't think that this analysis applies to every patent infringement case. And I do think that there's a clear conflict here between what our rights are under the declaratory judgment and the penalty that we were required to pay here by basically giving up our right to sue for patent infringement in a situation where we had to include those I was just going to say Let me ask you a question. You don't, your position, you're not arguing that the provision in the, are you arguing that the provision in the license agreement which provides for indemnification of cause for the infringement suit does not apply to you? You're saying you shouldn't be hit with it here, but are you saying that it doesn't apply to the licensor? It doesn't apply in this situation. Right. Okay. I'm not saying it doesn't apply to the licensor. I'm saying it doesn't apply in this situation. You understand what I'm saying. So I understand. What I'm trying to convey, perhaps inartfully, is that a preliminary, the preliminary question is was there a valid license agreement? And from that would flow whether or not there's any right to attorney's fees on the part of any partner. And, I mean, I think that's essentially the essence of our argument. One question. What is the situation now that I assume the license agreement is continuing? Well, the situation is that there is an adversary proceeding in the bankruptcy in which the Sanitec is sought to have the license agreement declared terminated. And that has been stayed pending the outcome of this appeal. I see. If I may, unless there are any further questions on that point, I'd like to turn to the question of attorney's fees, which I hope we wouldn't have to get to. But if we do, I think there's a serious problem with the way the Judge Werlein determined attorney's fees. I understand it's a discretionary matter. The amount of attorney's fees was over $600,000. Under Fifth Circuit law, a baseline for an attorney's fees award is that the person seeking the attorney's fees provides to the court sufficient documentation of its hours. And, in fact, here the court asked the parties to review the hours and determine which were allocated to a compensable issue. That is the question of whether the license agreement was valid. You're going to need a rebuttal time. We're going to let you finish off if you'd like. I'm happy to finish now. Okay. I'm happy to finish now, Judge. Because I'd like to- Give it your full time back. If you want to make this point, go ahead. Well- Don't delay it. No, I understand. I think I will save that until the rebuttal. I'll save my time for the rebuttal. Mr. Daugherty? Daugherty, Your Honor. May it please the Court. Judge Moore, certainly I do obviously agree that a patent infringement suit, whether compulsory or not, would be a breach. But I do think I want to stress one very important distinction factor that would also set out a claim that a declaratory judgment in and of itself would be a breach. The important distinction in Med-Immune is that's a different type of license agreement from what we have here. In Med-Immune, it's a typical one where a licensee will pay royalty so long as the patent is valid. And importantly, I think Justice Scalia said that there is no implied covenant not to challenge the validity of the patent in that contract, whereas we're dealing with the essence of the covenant here, contractually implied, where this is not contingent on the validity. It's just we have a license agreement. And the contract expressly says, identify little harmless claims against us for claims arising under the license agreement. And moreover, what they're really doing is challenging, whether it be by declaratory judgment or patent infringement, hey, you don't have a license. That's a breach. Keep in mind also this is a Texas law, Texas contract, and construed that way. So therefore, we would have a statutory right under Chapter 38 of the Civil Practice Remedies Code to get these. No suppression there. Whereas even under Texas law, there is discretionary declaratory judgment in terms of these, but not necessarily applicable here. But from a practical standpoint, I would submit that a declaratory judgment action brought by a license order to challenge the license agreement that the license were done would be a breach, would be a breach of an implied covenant, but certainly so here, especially whenever there was a patent infringement claim, which had we not prevailed on the license agreement, we would have been subject to damages for patent infringement, and those were not drawn. We tried to withdraw an admission on infringement. That was not drawn. And moreover- Was group permitted to enter this licensing agreement? I'm sorry? Was group permitted to enter this licensing agreement? Group had restrictions on collateral. But how I think it's handled- Will not create, incur, assume, or suffer to exist any lien security interest or other encumbrances against the collateral. Yes, Your Honor. And how the UCC typically deals with this and how it was found is that, first of all, that microwaste had no notice of the impairment on the ability to do, to impair the intellectual property. Moreover, that the- Would that have mattered? Sure, as a modified purchaser, a licensee obtaining something without notice of some type of impairment, yes. I thought your argument was that when the person who obtained this license obtained it, that the security lien did not obstruct the ability to offer the license. So then in your, following your argument, it seems to me it would be irrelevant when whether the licensee was aware of the security lien or not. Because your argument, at least I understood it in your reading, was the language in the security lien doesn't stop group from entering such a license. Is that right? Am I misunderstanding your argument? I think we're confusing the foreclosure statutes that talked about security liens and interest and also the factoring agreement that had its own situation and that did impair under the factoring agreement group's ability to do this type of arrangement. Under the impairment type of provision, how the law handles it is that, well, it's not invalidated. However, it can be subject to and it can be assigned to the creditor. And moreover, in terms of the New Jersey foreclosure statute, this is where I think the lien comes in. This was not treated as a lien or subordinate security interest that would be foreclosed. Rather, it's a right to payment. And moreover, importantly, this I think... The law was not treated? The license? You're just going a little fast for me. The license was not treated? The license. Okay. And moreover, and I think this is an important finding, that when the group was foreclosed upon, that affirmatively, this license was assigned. It was an asset. It was grabbed, signed, taken, not foreclosed upon. Affirmatively so by industries and through its foreclosure. Is a license generally considered a subordinate interest under Title IX? It could be considered a subordinate interest, not necessarily a security interest or lien, such that it's a type of prior claim that would be invalidated. You would typically think of those terms of like a mortgage or some other type of claim to prior claim to payment. But it's viewed as some kind of an encumbrance? Absolutely. On a patent? On a patent or intellectual property. Yes, it is. I think we can see the net number that it is. But I think the important factor to consider here is that this whole foreclosure notion of termination, that's not how it played out in the parties. I am just about out of time. I guess I have some rebuttal time. I wanted to talk about the corroboration issue that came about across the field. But... You've got... Oh, I've got two minutes left. Let me mention first about the fees. There's no shock about how fees were done here in interest in this case. If you want to... Before you go back to fees, can you back up because I'm still at the point where I'm trying to understand the arguments related to whether or not the license could have been entered. See, here's what bothers me. What bothers me is suppose this license is in for a dollar. It wasn't for a dollar. It was for $100,000. But suppose in order to avoid the transfer of bankruptcy, a group came along and gave one of their buddies a virtually royalty-free license doing something that clearly devalues intellectual property. Would that have been problematic? I mean, I know your argument is it's nice to have these facts, and I'm okay with that, but would that have been troubling? It would have been troubling, sure, but you would challenge that on different grounds, not those that are raised here. I mean, you would raise lack of consideration. You would also modify purchaser for value. Here you have clearly value and obligation to pay $100,000 royalty and moreover $75,000 on others. There are clearly obligations contained therein. So it sounds like you are trying to challenge the consideration of the agreement, whether it's worthwhile, whether it was for consideration, whether it was done with or without notice or with notice, therefore being fraudulent of the inability of a group to do this type of license. Those factors really weren't raised here, and that would be a different type of Texas law claim. I got it. Okay. And just in terms of dealing with attorney's fees, having gone through this, I think an interesting study on how you would do it in the Fifth Circuit practice, look at a case that I want to substitute process that involves some attorney's fees, Harris County v. Simi Investments in the Fifth Circuit, and they look at it. First of all, the court can figure out reasonable hours and reasonable rate, and that's what it did here. Lodestar, well, that would be the baseline, but Lodestar then deals with certain various Johnson v. Georgia Highway Express factors where they go up and down. And frankly, a lot of them are invalid. They've been deemed double-dipping. But when you do have a challenge to a fee that has been done this way, you identify certain fees that should not be awarded, that are not reasonable, not necessary, nor related to the types of claims in this suit, which actually is the process that the Fifth Circuit went in and that Harris County case I was involved in. You have not had any identification of specific fees that should not be attributable or cannot support the judge's finding that these fees were attributable to the declaratory judgment of patent infringement. How do we review the assessment of fees for? What's our standard of review? Abuse of discretion. And also in terms of the individual fee entries, whether they rise to sufficient evidence, then it would be clear error under the sufficiency of evidence standard. But I think it was remarkable. We're not having any independent challenge to... Just out of curiosity, what happens if you went on appeals? Do they pay your appeals attorney fees? It gets remanded back to the district court, and then we determine the appellate fees back in the district court. Actually, that's what happened in that Fifth Circuit case where I had to go back up to the Fifth Circuit again for more fees. And again, that will involve a segregation type of analysis about how much of this appellate time is spent dealing with the declaratory... preserving the judgment against Sanitec as opposed to trying to do a prosecute. Just a couple of minutes on the corroboration issue. On some of the prior printed publications, we do have a trial court finding that he didn't buy what CUSAC was saying. That would be like a marketing video. We thought we had an explanation for it, but he found inconsistencies. What I believe happened on the rest of the materials that we relied upon for obviousness and anticipation was that the court imposed a corroboration requirement. And here we do have corroboration with contemporaneous documents, and I think it exposes... Excuse me, Mr. Duncan. Did the court impose a corroboration requirement or did the court really conclude that... If you look at it, there was kind of a failure of proof in terms of establishing the date. It's a tough... It's a tough one. I know. I know. I won't have to distinguish your copyright case with your Sanitec case that you're on as well, but... I don't believe that looking at the findings that were done by the court and clearly linking them, that you cannot have clear and convincing evidence when it's not corroborated. And also keep in mind, on the establishing dates, many of these were articles that were published in conferences or in trade magazines. Frankly, absent the analysis that, oh, if you don't have corroboration, that's not good enough for me, independent corroboration, it's really inexplicable that it wouldn't rise to the level of proof because these were seminars where papers were presented, and it was obvious that these seminars were maintained at certain times in the past. What was the date? You're sure that the date was at the time of the application? Oh, absolutely, Your Honor. And some of these... The five you had done, except one, one of the... Well, let me focus on a few. Wall Street Journal was certainly one. And that was uncontested. It just missed a few of the elements or was a little bit too general in his opinion. But moreover, the conference materials, that included a conference paper as well as a conference slideshow. And frankly, the only legitimate explanation for why the court found it enough to be a very convincing evidence is that he had that corroboration requirement. Again, he said every time it's not corroborated. He felt that Mr. Cusack was sort of fuzzy on the dates. He was fuzzy on some dates. We explained. We went to great lengths to explain away the difference. I understand. I have problems with the standard of review on that, but we did in our briefing explain why there could have been some... What strikes me, it seems so odd, Mr. Judge, is that if a conference took place, I'm not challenging anyone's credibility, but if a conference took place, you can't just come in and have a firm, hard date. He did have a firm, hard date on those. The waffling was on this marketing video, which I think in the appendix is attached. I know it's attached. But that was where the confusion was, but not on the conference. What had happened? In fact, I'm Dr. Ryan, I own the program, but there are experts who attended these conferences. We know that they happen. We know that these things were published. I'll reserve my time for a moment. I'll try not to race too quickly. I just wanted to say on the issue of attorneys' fees, just three quick points. Number one, the court below, the court below in reviewing the records said the records that he was looking at were not itemized in a way that he could determine what was defensible and what wasn't. And so what he did instead was he looked at his own, he referred to his own experience as a trial judge, as a lawyer, and basically what he did, and I think it's fair to say this, rather than looking at the time records and evaluating them, he split the baby. In fact, the expression he used in his opinion was, well, I think about half the time was spent on one issue and half the time was spent on the other. The other thing that was troublesome about his opinion, and I understand this is a very difficult standard for us, is that he, sua sponte, looked at the Johnson versus Georgia factors. He didn't ask the parties for what they had to say about that. He basically, in the instructions he gave to the parties before making the determination, he asked them to allocate the time between one issue and another. But then, when it came to the question of whether any of the Johnson factors should be applied, upward or downward, he didn't give the parties a chance to do that. And that, we believe, is an abuse of discretion, because he didn't give the notice, he didn't give an opportunity to hear it. On corroboration, I think, Judge Shaw, you have it absolutely right. This was a failure of proof. The district judge had an opportunity to evaluate Cusack. Cusack's testimony was the only evidence of the sanitation, and Cusack was not believed by the district judge. But there's a more fundamental problem here. As the court is aware, in reviewing the printed documents that are being referred to here as participatory prior art, the court painstakingly construed the claims, looked at all of the references in light of the claims as construed, and made specific findings that none of the references that are referred to by micro-based had all of the elements of Claim 1 or all of the steps of Claim 18. So there's no proof of dissemination, and even if you got to dissemination, you have a fundamental failure of proof that any of these references were anticipatory. And it's quite striking that this issue is not even referred to in any of the briefs submitted by microwaves on this issue. I'd like to, since I have 55 seconds left, issues have also been raised about the failure by the district court to make any findings concerning the level of ordinary steel in the art. The reason for that was simple. No evidence was submitted by microwaves on that subject. You're saying it was basically a waiver of the obvious issues. And on the obvious issue, there was clearly a waiver on that. There was no mention of it in the pretrial order. There was no evidence submitted. No expert testimony. So, I mean, I think, I think waiver is sufficient. Even if, on some theory, you could say that there was no waiver, there was no proof. No proof submitted. And there's also the fundamental problem that the references that would be used in an obviousness case, if one had been presented, are not prioritized for the reasons I mentioned before. Thank you very much. On ordinary steel, the parties have argued that it was... Counsel, this is your rebuttal. You don't get to actually go back and address that. Oh, or is this part of your appeal? This is part of my appeal. Can I ask you real quick before you go there? I want to answer your questions. Yeah, I know that. So, where would you say is sort of the most glaring error in the opinion with regard to corroboration? Because you kind of acknowledged in the first few instances when he went through the district court... When he went through Kuzak's testimony, he talked about faulty date recollection, talked about inconsistencies, and then said not corroborating. In those, I mean, clearly he's rejecting Kuzak's testimony. But you said with regard to some of the other pieces of the prior order that he just flat-out said not corroborating. It really didn't seem to be based upon the credibility of Mr. Kuzak. Is that right? Yes, Your Honor. Where is sort of the most glaring example and the best case... Best case. ...of where he's messed up on the worst? The conference materials that everybody conceded. The conference happened. In fact, the expert had been there. Let me pull some of them out. Now, are you talking about the conference materials or Mr. Kuzak's testimony that he sent the conference materials to people after the conference? The conference materials. Yes, Your Honor. He also said that he passed them out at the conference and also that the slideshow was done. And I think, at least with respect to those materials as well as the Wall Street Journal, the corroboration aspect, although I don't think that he applied the corroboration to the Wall Street Journal. Some of the abstracts, there was one German magazine article that was dated and said it was a spring issue that said it wasn't corroborated. Looking at those, those are the most palpable instances where clearly, you know, what other explanation than the corroboration... But he doesn't... He doesn't... I'm looking on pages 18 and 19 of his opinion, which I believe is the portion making the fact findings relevant to the conference materials. And I may be wrong, maybe he'd written somewhere else, but... And he says that he did not believe... He was not clearly convincing that they had been disseminated. Right. That's not him saying it's not corroborated. It's him saying it's not... There's not clear convincing evidence that the paper was... Oh, he also... I believe also he said that it was, again, not corroborated. Where? Oh. Since this is your best one, that's what I'm looking for. Let me see where. Because he said it's not corroborated with regard to Cusack's sending of the conference materials out to someone else after the conference, but that's why I said that's a separate thing, right? And also this slideshow. I'm sorry, I'm at a loss for exactly... I should be better prepared about exactly where it is you were referring to, which findings. I think you just mentioned one in here. I was on pages 18 and 19 of his opinion, which I believe is where he made the findings relevant to the conference. So I just want to make sure I'm honed in on what you want me to look at. I understand. Actually, when I looked at page 18 and 19... Of his opinion, his number 18 and 19. Oh! Page 23 in your appendix. I'll lose my time every time I actually find your appendix. I am sorry. I'm totally derailing you, aren't I? No, no, no. I do want to get to this, because frankly, we don't get to anything else if we don't get to this. He talked about in the slideshow that he had presented this and presented the abstract at the slideshow. And it says that it happened and that the evidence is not clear. Oh, the judge... Okay, so where is the part that you think that Judge Ayer is a matter of law with regard to the test he's applying? Because that's what you're really arguing. He's applying an inappropriate legal test. One that is too strict on therapists, though. I guess 107, that they're not clear in convincing that they were disseminated or publicly accessible. But that's not with regard to the slides at the conference. That's with regard to when he sent out... Right. I agree. I see that. But 106, he's talking about again that he sent them out afterwards. Again, it's also 101. The copies of the paper were disseminated. That's 101. 102, no evidence that the slideshow was presented or publicly accessible. Not considering those and not looking at those... But he's saying there's no evidence the slideshow was disseminated or publicly accessible. That's exactly the right standard, right? There's nothing wrong with that. Well, it's a holding... Well, again, then... I mean, the law says it has to be publicly disseminated. Oh, absolutely. So he's saying it wasn't. Right. Not saying it was, but it wasn't corroborated. Right. I cannot sit there and say everything was tied to corroboration. There were corroboration statements as to those. Clearly, how do you say that the slideshow wasn't up there? There's testimony that it was. He says there's no... Whose testimony, Mr. Cusa? Cusa. Okay. He didn't buy my dates. I understand that. That was an explanation of limited time. All right. I think that's a sufficient answer. Thank you.